670 S.E.2d 752

Claude M. SCIALDONE

v.

COMMONWEALTH of Virginia

Barry R. Taylor

v.

Commonwealth of Virginia

Edward Jones, s/k/a Edward S. Jones

v.

Commonwealth of Virginia.

Record Nos. 1737–06–1, 1738–06–1 and 1739–06–1.

Court of Appeals of Virginia,
Richmond.

Jan. 13, 2009.

Marvin D. Miller (Heather Golias; Law Offices of Marvin D. Miller, on briefs), Alexandria, for appellants.

Donald E. Jeffrey, III, Senior Assistant Attorney General (Robert F. McDonnell, Attorney General, Karri B. Atwood, Assistant Attorney General; Gregory W. Franklin, Assistant Attorney General, on briefs), for appellee.

Present: FELTON, C.J., ELDER, FRANK, KELSEY, HALEY, PETTY, BEALES, POWELL, JJ., and CLEMENTS, Retired Judge.*

UPON REHEARING EN BANC

D. ARTHUR KELSEY, Judge.

The trial court found Claude M. Scialdone, Barry R. Taylor, and Edward S. Jones in contempt of court. On appeal, a panel of this Court held the evidence was sufficient to support the contempt findings. *Scialdone v. Commonwealth,* 51 Va. App. 679, 724–27, 660 S.E.2d 317, 340–41 (2008). The panel remanded the cases for retrial, however, ruling that the trial

---

* Judge Clements participated in the hearing and decision of this case prior to the effective date of her retirement on December 31, 2008, and thereafter by designation pursuant to Code § 17.1–400(D).

court improperly conducted a summary contempt proceeding and thereby deprived appellants of due process rights associated with plenary contempt. *Id.* at 718–24, 660 S.E.2d at 337–41.

At the Commonwealth's request, we agreed to rehear the cases *en banc.* Having done so, we now hold appellants failed to preserve for appeal their argument that the trial court deprived them of due process rights associated with plenary contempt. At no point during the contempt proceeding did appellants object to its summary nature or assert any entitlement to plenary due process rights. Instead, appellants raised these points for the first and only time solely in support of a request under Code 19.2–319 for bail and a stay of the judgments pending appeal. A motion under Code 19.2–319, standing alone, does not preserve issues for appeal not previously raised in the trial court.

I.

On July 11, 2006, the trial court began the jury trial of Frankie Dulyea on various criminal charges. Scialdone served as lead defense counsel at trial. Jones, a third-year law student, and Taylor, Scialdone's law partner, assisted the defense. During the course of the trial, the court suspected Scialdone and Taylor had altered a document offered into evidence. The court also became concerned Jones had added insulting language to an exhibit offered for admission into evidence. The court investigated these concerns by examining the documents and by summoning additional witness testimony and documentary evidence. The court heard some of this evidence while Taylor and Jones were not present in the courtroom.

Anticipating where the court's investigation might end, Scialdone stated he would "like to know what [he's] being charged with" because he "may want to have a lawyer for that." In response, the trial court ruled: "I'm finding you in summary contempt, all three of you.... At this point in time that's what's happening." Upon being advised of this finding,

neither Scialdone, Taylor, nor Jones objected to the summary nature of the contempt findings. Nor did they request any procedural rights associated with plenary contempt.

Dulyea's jury trial ended three days later. Shortly after the jury had been discharged, the trial court referred back to its ruling made the first day of trial and stated: "Pursuant to Code § 18.2–456, I found all three of you in contempt of court." Upon explaining the rationale behind its ruling, the court sentenced Scialdone, Taylor, and Jones to each serve ten days in jail and pay a $250 fine. Once again, none of the appellants objected to the summary nature of the contempt findings. Nor did they request any of the procedural protections associated with plenary contempt. That same day, appellants filed notices of appeal.

A few days later, appellants filed with the trial court Motions for Stay of Execution of Sentence.[1] Relying on Code 19.2–319, they requested a stay of execution of the sentence pending appeal of the contempt conviction to the Court of Appeals. On July 18, appellants also filed a Motion for Emergency Stay of Sentence in this Court requesting that we exercise our authority under Code 19.2–319 to stay the sentences pending appeal. The motions alleged the trial court had not ruled on the motions to stay pending in the trial court.

We issued an order noting that "the circuit court's oral ruling from the bench" found appellants in contempt of court and sentenced them to an active jail term. *See* Temporary Stay Order (July 19, 2006). In response, we further noted, appellants had "filed motions, pursuant to Code 19.2–319, with the circuit court asking that court for a stay of each of the ten-day sentences for contempt of court pending the appeals of these cases." *Id.* We granted "a temporary stay of the execution of the jail sentences until such time that the circuit court rules on the pending motions filed before it pursuant to Code 19.2–319." *Id.* Our remand was specific and limited:

---

1. Scialdone and Taylor filed their motions in the trial court on July 17. Jones filed his motion on July 18.

"We direct the clerk of the circuit court to forward a copy of the written orders *addressing these motions*" to our clerk of court within 14 days. *Id.* (emphasis added).

In response to our remand order, the trial court conducted a hearing on the request for a stay pending appeal. At that hearing, appellants argued they should be granted bail in order to pursue an appeal challenging the factual sufficiency of the contempt findings and legal validity of the summary contempt procedures. For the first time during the trial court proceedings, appellants argued the court improperly found them guilty of summary contempt without providing them with prior notice of the charge, an opportunity to prepare a defense, or the benefit of legal counsel. Appellants, however, did not ask the court withdraw its contempt findings, issue a show-cause order outlining the charges, or continue the proceedings so they could retain counsel and prepare a defense. Instead, appellants criticized the summary nature of the contempt proceedings solely as a preview of the arguments they intended to make on appeal.

"[B]ased upon the foregoing," appellants argued, they were entitled to "an order of stay of execution of the sentence[s] pending appeal of the contempt conviction[s] to the Court of Appeals of Virginia." Motions for Stay of Execution of Sentence (July 17–18, 2006). In their attachment to the motions, appellants specifically made clear the scope of their argument to the trial court: "This Court is respectfully requested to consider these authorities in support of the Motion to Stay Execution of Sentence pending appeal." *Id.* at Attachment A.

The trial court denied the motion for a stay pending appeal. Appellants appealed the trial court's Code § 19.2–319 ruling and eventually secured from the Virginia Supreme Court an order staying execution of the sentences pending appeal.

With the sentences stayed, the appeal continued. Scialdone, Taylor, and Jones filed appellate briefs contending the evidence was insufficient as a matter of law to find them guilty of contempt of court. They also argued that, even if the evidence were sufficient, the trial court erroneously conducted a

summary contempt proceeding that, in effect, deprived them of due process rights available under plenary contempt law.

A panel of this Court rejected appellants' challenge to the sufficiency of the evidence, *Scialdone,* 51 Va.App. at 724–27, 660 S.E.2d at 340–41,[2] but accepted appellants' due process argument and remanded the cases for retrial using plenary contempt procedures. The Commonwealth filed a petition for *en banc* rehearing contesting the panel's decision to remand the cases for retrial. We granted the Commonwealth's petition for rehearing *en banc* to reconsider this issue.

## II.

Appellants did not petition for *en banc* rehearing of the panel's decision finding the evidence sufficient and, thus, we need not reengage that aspect of these appeals. *See generally Ferguson v. Commonwealth,* 51 Va.App. 427, 432–33, 658 S.E.2d 692, 695 (2008) (*en banc*) (holding the *en banc* court would not address issues "affirmed by the panel opinion" for which appellant "did not petition for rehearing *en banc*"). We reinstate the panel opinion as to those issues. *Id.* We limit our *en banc* review to the question whether appellants properly preserved their appellate challenge to the summary nature of the contempt proceeding and, if so, whether the trial court deprived appellants of procedural rights associated with plenary contempt. Because we answer the first question in the negative, we do not reach the second.

## III.

Appellants contend the trial court erroneously conducted a summary contempt proceeding and thereby deprived them of due process rights associated with plenary contempt. *See generally Int'l Union, United Mine Workers of Am. v.*

---

2. The panel reviewed in detail the circumstances justifying this conclusion as applied to Scialdone and Taylor. *Scialdone,* 51 Va.App. at 724–27, 660 S.E.2d at 340–41. The Court had earlier refused to consider Jones's sufficiency challenge and that issue was not before the panel. *Id.* at 724 n. 12, 660 S.E.2d at 340 n. 12.

*Bagwell,* 512 U.S. 821, 826–34, 114 S.Ct. 2552, 2556–61, 129 L.Ed.2d 642 (1994). Nothing in the record, however, shows that appellants ever asked the trial court to recognize any specific procedural right associated with plenary contempt. In other words, appellants argue the trial court erroneously deprived them of procedural rights they never requested.

▆ Rule 5A:18 applies to appellate challenges of summary contempts, *Singleton v. Commonwealth,* 52 Va.App. 665, 672–73, 667 S.E.2d 23, 26 (2008), just as it does to any other non-jurisdictional claim of trial court error. *See, e.g., Nusbaum v. Berlin,* 273 Va. 385, 406, 641 S.E.2d 494, 505 (2007) (barring argument that the trial court violated defendant's due process rights "by summarily convicting him of indirect [plenary] criminal contempt"). Appellants acknowledge this point but argue their motions under Code 19.2–319 to stay their sentences satisfy Rule 5A:18. We disagree.

▆ Under Rule 5A:18, raising a legal argument in support of *one* type of relief does not preserve for appellate review the same argument in support of *another* type of relief which was *never* requested. Put another way, when a "party does not simply disagree with the action of the trial court, but seeks the trial court to take action, that action must be expressly sought." *Parker v. Commonwealth,* 14 Va.App. 592, 596, 421 S.E.2d 450, 453 (1992). Thus, a litigant who has merely *"questioned* the correctness" of the court's order but did not "expressly indicate the action [he] wanted the trial court to take" cannot appeal on the ground that the trial court erroneously failed to take some required action. *Widdifield v. Commonwealth,* 43 Va.App. 559, 562–63, 600 S.E.2d 159, 161–62 (2004) *(en banc)* (emphasis in original).

▆ This principle uniformly applies to objections to seating jurors,[3] objections to the same evidence from different

---

3. A party who unsuccessfully objects to rulings made during the *voir dire* of a prospective juror has no appellate complaint as to that juror unless he specifically asked the trial court to strike that juror. *See Mu'Min v. Commonwealth,* 239 Va. 433, 445 n. 6, 389 S.E.2d 886, 894

witnesses,[4] requests for cautionary instructions,[5] objections alleging witness perjury,[6] and objections to irregularities in jury deliberations.[7] In each example, the point is the same: Except in the most egregious of circumstances, a litigant cannot argue on appeal that the trial court erroneously denied him relief which he never specifically asked for in the trial court. *See, e.g., Bennett v. Commonwealth,* 29 Va.App. 261, 280, 511 S.E.2d 439, 448 (1999) (holding "the objecting party must expressly seek the action that it desires the judge to take"); *cf. Gray v. Netherland,* 518 U.S. 152, 167–69, 116 S.Ct. 2074, 2083–84, 135 L.Ed.2d 457 (1996) (holding a motion to exclude evidence does not require a trial court to grant a continuance *sua sponte* when the court denies the motion).

---

n. 6 (1990); *Spencer v. Commonwealth,* 238 Va. 295, 306–07, 384 S.E.2d 785, 793 (1989).

**4.** Thus, an unsuccessful objection "to the admissibility of certain evidence [is] waived by the failure to object to the same evidence subsequently introduced." *Philip Greenberg, Inc. v. Dunville,* 166 Va. 398, 404, 185 S.E. 892, 894 (1936). This is true even if "precisely the same fact" was involved and the trial court had earlier rejected precisely the same objection. *Id.; see also Portner v. Portner's Ex'rs,* 133 Va. 251, 263, 112 S.E. 762, 766 (1922) (holding that, "if it had been error to admit [the challenged evidence] in the first place, subsequent introduction of the same evidence without objection constituted a waiver of the previous objection"); Charles E. Friend, *The Law of Evidence in Virginia* § 8–4, at 295 (6th ed. 2003) ("Waiver is found where ... [t]he objecting party fails to object to the same evidence when subsequently introduced by the opponent." (emphasis omitted)).

**5.** A party who unsuccessfully objects to evidence cannot appeal on the ground the trial court failed to give a cautionary instruction unless he asked the trial court to give a cautionary instruction. *Largin v. Commonwealth,* 215 Va. 318, 321, 208 S.E.2d 775, 777 (1974); *Berry v. Commonwealth,* 22 Va.App. 209, 214, 468 S.E.2d 685, 687–88 (1996).

**6.** A defendant's notice to the court that a witness has likely perjured herself is not tantamount to asking the court for a mistrial, an order, or "any specific remedy." *Elliott v. Commonwealth,* 267 Va. 396, 422, 593 S.E.2d 270, 286 (2004).

**7.** A party cannot appeal the trial court's failure to take specific action in response to an irregularity in jury deliberations unless the party asked the trial court to do something about it. *See, e.g., Parker,* 14 Va.App. at 596, 421 S.E.2d at 453.

This principle, so basic to the nature of the judicial process, undergirds our application of procedural default law. Like most courts, we believe "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Greenlaw v. United States,* —— U.S. ——, ——, 128 S.Ct. 2559, 2564, 171 L.Ed.2d 399 (2008) (citation omitted). For this reason, courts rely "chiefly on the *parties* to raise significant issues and present them to the courts in the appropriate manner at the appropriate time for adjudication." *Sanchez–Llamas v. Oregon,* 548 U.S. 331, 356, 126 S.Ct. 2669, 2685, 165 L.Ed.2d 557 (2006) (emphasis in original).

In this case, appellants filed motions under Code 19.2–319 asking the trial court to stay their sentences and admit them to bail pending appeal. We remanded the case for the trial court to address those motions. "Code § 19.2–319 allows for a person who has been convicted of an offense to be released on bail during the pendency of an appeal." *Bowling v. Commonwealth,* 51 Va.App. 102, 108 n. 4, 654 S.E.2d 354, 357 n. 4 (2007). In this respect, "a bail proceeding is not an integral part of the guilt-innocence determination. Rather, it is *ancillary* to the criminal prosecution." *Askew v. Commonwealth,* 49 Va.App. 127, 138, 638 S.E.2d 118, 123 (2006) (quoting *Commonwealth v. Smith,* 230 Va. 354, 357, 337 S.E.2d 278, 279 (1985)) (emphasis added by *Askew* ). A motion under Code § 19.2–319 does not expressly or implicitly call upon the trial court to reconsider its prior rulings or vacate the judgment being appealed.

In short, appellants never asked the trial court to grant them any procedural right associated with plenary contempt.[8] It would be altogether wrong for us to recast the Code 19.2–319 motions to stay into *de facto* motions for reconsideration of

---

8. Appellants do not argue that any exception to Rule 5A:18 applies, and we will not invoke one *sua sponte. See Edwards v. Commonwealth,* 41 Va.App. 752, 761, 589 S.E.2d 444, 448 (2003) *(en banc), aff'd by unpublished order,* No. 040019 (Va. Oct. 15, 2004).

the merits of the case. Out of "fairness to the trial judge" appellate courts should not "put a different twist on a question that is at odds with the question presented to the trial court." *Commonwealth v. Shifflett,* 257 Va. 34, 44, 510 S.E.2d 232, 237 (1999).

If we were to accept appellants' argument, we would impose upon trial courts the *sua sponte* obligation to vacate a conviction on grounds raised for the first and only time during a motion for stay pending appeal when the party standing to benefit from the vacature, the defendant, conspicuously chose *not* to seek such relief. Doing so would be as unprecedented as it would be problematic—particularly in cases where, as here, appellants "may have had a perfectly good reason" for not specifically asking the trial court to proceed under plenary contempt proceedings. *Singleton,* 52 Va.App. at 672 n. 3, 667 S.E.2d at 26 n. 3. "One such reason is that the statutory 'constraints' of Code §§ 18.2–456 and 18.2–457 do not apply to plenary, indirect contempt proceedings." *Id.* (citing *Robinson v. Commonwealth,* 41 Va.App. 137, 146, 583 S.E.2d 60, 64 (2003)).

In many respects, our case parallels *Nusbaum.* There, a lawyer was held in summary contempt and argued on appeal he was entitled to due process protections available for plenary contempt. Prior to the entry of the final order, the lawyer stated "specific objections" to the summary proceeding (similar to the ones asserted here) claiming the trial court "violated his due process rights." *Nusbaum,* 273 Va. at 404, 641 S.E.2d at 504. The lawyer advised the trial court that he presented his specific objections to "make sure" he "preserved any right of appeal" of the summary contempt finding. *Id.* The court agreed and invited the lawyer "to state on the record his objections to the contempt of court finding." *Id.* at 406, 641 S.E.2d at 505.

The lawyer in *Nusbaum,* however, did not ask the trial court to "reconsider and set aside the finding of contempt of court for those reasons." *Id.* Stating that "he was not requesting the circuit court to reconsider its ruling," the

lawyer advised the court that he merely wanted to ensure that the final order "include the 'particulars' of his objection" to the summary contempt conviction. *Id.* After hearing the lawyer's specific objections to the contempt finding, the trial court entered a final order confirming its previous bench ruling finding the lawyer in contempt.

On appeal, the lawyer argued that "having made the circuit court aware of his objections, he had no obligation to ask the court to reconsider any matter since the court had the opportunity, within 21 days of entering the final order, to vacate that order and change its rulings." *Id.* at 402, 641 S.E.2d at 503. The Virginia Supreme Court flatly disagreed. The lawyer could not claim the trial court erred in not vacating its contempt finding on due process grounds, *Nusbaum* held, because the lawyer never once asked the court to do so. "Those issues, whether the circuit court violated his due process rights by summarily convicting him of indirect criminal contempt, with no notice of the charge, no plenary criminal hearing, and no substitution of the Commonwealth as the prosecuting party, are therefore waived on appeal." *Id.* at 406, 641 S.E.2d at 505.

Like the lawyer in *Nusbaum*, appellants in this case never asked the trial court to vacate its oral contempt findings.[9] Nor did they ever seek permission to relitigate the charges using plenary contempt procedures. Both the lawyer in *Nusbaum* and appellants in this case raised their arguments solely for appellate purposes: the former in an ineffectual effort at preserving the issue for appeal, the latter in an unpersuasive effort to obtain bail pending appeal. In neither

---

9. The trial court's oral contempt pronouncements were not merely forewarnings of the court's ultimate decision. In Virginia, contempt orders "orally pronounced from the bench" are immediately effective and enforceable. *Rollins v. Bazile*, 205 Va. 613, 616, 139 S.E.2d 114, 116 (1964). A written order memorializing an oral contempt finding "does not constitute an integral part of, and should not be confused with, the judgment itself." *Id.* at 617, 139 S.E.2d at 117; *see also Jefferson v. Commonwealth*, 269 Va. 136, 139–40, 607 S.E.2d 107, 109 (2005) ("[T]he *Rollins* principle does not affect the rule that: 'A court speaks only through its orders.' ").

instance, however, were the trial courts asked to supply any neglected due process protection. To be sure, the only difference between *Nusbaum* and this case is the lawyer in *Nusbaum* said he was not asking the trial court to vacate its earlier rulings based upon his objections to the summary process whereas, here, appellants made no such objections in the first place and thus had no reason to disavow them later.

For these reasons, we find it inconsequential that "the trial judge acknowledged she *received and read* appellants' motions for stay *before* she entered the order finding the men in contempt on Wednesday, July 19." *Post* at 250, 670 S.E.2d at 764 (emphasis in original). Exactly the same thing could be said about the trial judge in *Nusbaum*. Prior to the entry of the final order, he heard in open court each of the lawyer's arguments challenging the summary contempt. The objections appeared on the later written order. Yet, like appellants, the lawyer in *Nusbaum* never asked the trial court to vacate its summary contempt findings so the case could be relitigated using plenary contempt procedures. This disconnect fully negates the assertion that appellants gave the trial court a sufficient opportunity to "correct the alleged error." *Post* at 255, 670 S.E.2d at 766. In *Nusbaum,* as here, the only opportunity being presented to the trial court was the opportunity to *sua sponte* vacate its earlier rulings when the complaining parties conspicuously had not asked it to do so.

### IV.

Because appellants never asked the trial court to employ plenary contempt procedures, they will not now be heard to assert the trial court erred by failing to do so. We reinstate the panel's sufficiency holdings and affirm the trial court's findings of contempt against Scialdone, Taylor, and Jones.

*Affirmed.*

BEALES, J., concurring, in part, and dissenting, in part.

In this difficult case, I have concluded that the three appellants did, in fact, preserve their objections to the "sum-

mary" contempt proceeding used by the trial court, as the trial court explicitly ruled that the hearing was conducted under the summary contempt statute and reaffirmed that ruling after the appellants presented their written motions discussing the inconsistencies between the trial court's stated intention to hold a summary proceeding and the actual hearing that the court held. The trial court said at the final hearing:

Although you've been found in summary contempt and thus have no right to counsel, I have, in fact, read all of the papers and information submitted by Mr. Miller and I've also reviewed a memorandum of law submitted by the National Association of Criminal Defense Lawyers.

It appears that their position is that this is not summary contempt but some other form of contempt. But I do not find their arguments persuasive.

Although this hearing was held to address appellants' motion to stay the execution of their sentences, the trial court clearly considered the substance of appellants' arguments regarding the procedure used by the court to find them in contempt.

Given the recent Supreme Court of Virginia decision in *George v. Commonwealth*, 276 Va. 767, 773, 667 S.E.2d 779, 782 (2008), although the appellants' arguments and timing in this case were not as specific as we might prefer (and as the majority of this Court would require), I agree with the conclusion of the dissenting opinion that appellants' argument regarding the contempt procedure used here was preserved as the trial court knew of and ruled on appellants' objections. *Contrast Nusbaum v. Berlin*, 273 Va. 385, 402–04, 641 S.E.2d 494, 503–04 (2007) (finding Nusbaum *specifically told the court* that he was not asking that the court reconsider its contempt ruling, thus his argument regarding the court's procedure was not preserved for appeal). Consequently, I believe appellants' Question Presented regarding due process must be addressed.

Contempt charges are tried either with a summary proceeding wherein the trial court acts based on its own observations from the bench or with a plenary proceeding wherein evidence

is presented to the trial court and the accused is afforded the traditional due process rights of a defendant. Normally, this difference reflects the nature of the contempt—whether the accused's actions were "direct," i.e., before the court, or "indirect," i.e., outside the presence of the court:

> "The substantial difference between a direct and a constructive [indirect] contempt is one of procedure. Where the contempt is committed in the presence of the court, it is competent for it to proceed upon its own knowledge of the facts, and to punish the offender without further proof, and without issue or trial in any form." (Citations omitted).
>
> "In dealing with indirect contempts—that is, such as are committed not in the presence of the court—the offender must be brought before the court by a rule or some other sufficient process; but the power of the court to punish is the same in both cases."
>
> [*Burdett v. Com., Burdett's Case,*] 103 Va. [838,] 845–46, 48 S.E. [878,] 880–81 [(1904)].
>
> *Davis v. Commonwealth,* 219 Va. 395, 398, 247 S.E.2d 681, 682 (1978). Indirect or constructive contempt charges, therefore, are not brought summarily, but must proceed under a more formal procedure than an immediate adjudication by the court.

*Robinson v. Commonwealth,* 41 Va.App. 137, 145–46, 583 S.E.2d 60, 64 (2003) (footnote omitted; alterations in original); *see also Cooke v. United States,* 267 U.S. 517, 535–37, 45 S.Ct. 390, 394–95, 69 L.Ed. 767 (1925). Here, the trial court insisted that it was acting under its summary contempt authority. However, as the court took evidence from people who were not in the courtroom when the offending documents were offered into evidence, these proceedings simply could not have been summary in nature. Therefore, I would find that the trial court erred in using the procedure that it followed here.

To determine the appropriate remedy for this procedural error, the sufficiency of the evidence must be considered. Although the majority opinion cites *Ferguson v. Common-*

*wealth,* 51 Va.App. 427, 432–33, 658 S.E.2d 692, 695 (2008) (*en banc*), to explain why it does not discuss the sufficiency of the evidence to support appellants' convictions, the due process and sufficiency arguments are intertwined in this appeal, as the various issues were not in *Ferguson. Id.* at 430–32, 658 S.E.2d at 693–95. In addition, Ferguson's remaining questions presented, the ones that the Court *en banc* did not address, related to different convictions than the one that the Court *en banc* did consider. *Compare Ferguson v. Commonwealth,* 50 Va.App. 351, 355, 649 S.E.2d 724, 726 (2007) (three-judge panel), *to Ferguson,* 51 Va.App. at 430–32, 658 S.E.2d at 693–95 (sitting *en banc*). Here, the sufficiency and due process arguments relate to the same conviction for each appellant, as evidenced by the three-judge panel's explanation in this case that it addressed the sufficiency question only "insofar as necessary to assure that their retrial on remand will not violate double jeopardy." *Scialdone v. Commonwealth,* 51 Va.App. 679, 724, 660 S.E.2d 317, 340 (2008). Finally, appellants here won their appeal at the panel level, and, as a result, the one conviction of each appellant was reversed. Conversely, the *Ferguson* panel opinion reversed only two of Ferguson's convictions and affirmed the other three convictions. Ferguson did not ask for review of any of the three affirmed convictions, and the Commonwealth in appealing the panel's decision regarding one of the felony child neglect convictions did not implicate any of the affirmed convictions or the overturned malicious wounding conviction. Therefore, in *Ferguson,* 51 Va.App. at 432–33, 658 S.E.2d at 695, the Court appropriately decided that reexamination of the convictions that the three-judge panel affirmed was not appropriate. That same analysis, for the foregoing reasons, does not apply in this case, and, therefore, the sufficiency of the evidence must be addressed.

In the case of appellant Scialdone, the evidence was sufficient to convict him of summary contempt, even if the evidence collected by the trial court about events that occurred outside its presence were excluded. Based solely on the documents presented to the trial court by Scialdone himself as

part of his client's defense, the trial court had sufficient evidence to find him guilty of summary contempt of court. The first day of the trial, Scialdone attempted to introduce an exhibit (Exhibit 1), dated July 11, 2006, that listed the rules for a Yahoo chat room. The trial court ruled that Exhibit 1 was irrelevant as the offense for which Scialdone's client was being prosecuted occurred in 2005. Scialdone told the court that he hoped to have the rules for the relevant time period later in the trial. After the lunch break, Scialdone attempted to introduce into evidence a second exhibit (Exhibit 2) that the trial court noted looked exactly like Exhibit 1, except the date was missing from the bottom of Exhibit 2. The court also noticed that the sign-in name for the chat room was different. Scialdone then represented to the court that Exhibit 2 was the document that his client's "father brought to my office when [the client] was arrested." Scialdone repeated this representation later, during argument over admission of Exhibit 2. The court then told Scialdone that he could put his client's father on the stand to provide a foundation for admission of the document. The father testified that, after his son was arrested, he and a relative used his wife's sign-in name, found the chat room rules, printed out two pages, stapled them together, and brought them to Taylor to use in his son's defense. The trial court noted that Exhibit 2 had only one page and that the sign-in name was different from the name that the father testified he had used. Scialdone then claimed he first saw the document during lunch.

At this point, the trial court discovered a connection between Scialdone's secretary and the sign-in name on Exhibit 2, told Scialdone to call his secretary and have her come to the courthouse, and also told Scialdone to have Taylor come to the courthouse. The trial court then proceeded to take testimony from the secretary and Taylor, asked questions of Scialdone and Jones, and accepted various additional documents that were printed out from the computers in Scialdone's law office. Although both Taylor and Jones were excluded during much of this testimony, Scialdone's counsel acknowledged during oral argument before this Court *en banc* that Scialdone was

not excluded from the courtroom by the trial court and was, therefore, present during the entire contempt proceeding as it related to him.

Although Scialdone represented to the trial court that Exhibit 2 had been provided to his office by his client's father, that exhibit was clearly not the one provided by the father, but instead was a copy of Exhibit 1, altered to omit the date. As an attorney and an officer of the court, Scialdone owed a duty of truthfulness and honesty to the trial court. Scialdone's cavalier representation to the trial court that Exhibit 2, a document that he wanted to present to the jury, was authentic—when it clearly was not—violated this duty. Therefore, although the trial court continued to investigate the production of Exhibit 2, that deviation from summary contempt procedure did not unduly affect Scialdone's conviction. Even if the additional testimony and evidence were excluded, the remaining evidence was still sufficient to convict Scialdone of summary contempt of court. Therefore, as the error in these proceedings was harmless beyond a reasonable doubt in relation to Scialdone, *see Dearing v. Commonwealth,* 259 Va. 117, 123, 524 S.E.2d 121, 124–25 (2000), I agree with the majority opinion's basic conclusion that his conviction should be affirmed, although I reach this conclusion for different reasons.

In contrast, the trial court found Taylor guilty of summary contempt based on the evidence produced by the witnesses that the court examined in its efforts to investigate the production of Exhibit 2—not based on the documents proffered by Scialdone in open court as evidence in the criminal jury trial over which the court was presiding. The evidence that Scialdone introduced in an attempt to have Exhibit 2 admitted did not implicate Taylor in any wrongdoing before the trial court. In fact, Taylor was not even in the courtroom until the trial court ordered Scialdone to call and tell him to come to the courtroom.[10] Only after the trial court asked

---

10. Although Taylor came to the courthouse with Scialdone's secretary, the trial court excluded Taylor from the courtroom during the secretary's and Jones's testimony.

questions of the secretary, Scialdone, Taylor, and Jones did the trial court find that the evidence implicated Taylor in the commission of a fraud on the court. Therefore, the error in relation to Taylor's conviction was not harmless. *See id.*

As the error was not harmless, and as Taylor argues that the evidence was insufficient to convict him of contempt, I believe we should also consider the sufficiency of the evidence to convict him in order to determine if the conviction should be remanded for retrial or dismissed. *See, e.g., Leybourne v. Commonwealth,* 222 Va. 374, 377, 282 S.E.2d 12, 14 (1981).

After reviewing the totality of the evidence against Taylor, I would find that the trial court had sufficient facts before it to allow a rational factfinder to conclude that Taylor acted in contempt of court. Taylor was the first person in the law office to see the original document, as the client's father gave the copy of the chat room's guidelines to Taylor rather than to Scialdone. In addition, when the secretary returned to the office at the court's direction to attempt to replicate Exhibit 2, Taylor's computer produced a document exactly like Exhibit 2, except that document had a date at the bottom. Taylor himself admitted that he was in the office when his partner and Jones were working on the case and that he helped them prepare. He also testified that Exhibit 2 was the document given to him by the client's father, and he claimed that, after Scialdone called and asked him to look for it, he found it on a table in their conference room during the criminal trial's lunch break. The secretary testified that Taylor was the attorney who asked her to print off the chat room rules.

Considering all these facts, I would find that the evidence was sufficient to support the trial court's finding of contempt. However, this evidence was not properly before the court in Taylor's summary contempt proceedings, and Taylor was improperly excluded from the courtroom during the contempt hearing when the trial court heard important parts of the testimony concerning him. Therefore, I would reverse and remand Taylor's conviction for a new plenary contempt hearing if the trial court or the Commonwealth be so inclined,

rather than dismiss the conviction outright based on the procedural errors. *Id.* Consequently, I must dissent from the majority opinion's affirmation of Taylor's conviction.

Finally, Jones also was found in contempt based on evidence presented after the trial court began taking evidence and questioning witnesses. The trial court had Jones sworn as a witness after hearing testimony from Taylor and the secretary. Jones admitted that he helped prepare the case before trial, but told the trial court that he was not present in the office during lunch. Instead, he went out to eat with his wife and her sister. Jones then admitted that he created and used the offending sign-in name that appeared on Exhibit 1 and that he printed out that document. The trial court then ordered Jones to go outside the courtroom while Scialdone presented his explanations for Exhibits 1 and 2.

Prior to the confession by Jones, the trial court did not have sufficient evidence to convict him of summary contempt. Therefore, the trial court's error was not harmless error in relation to Jones, especially as the trial court also improperly excluded him from the courtroom during part of the contempt proceedings against him. However, unlike Taylor, the sufficiency of the evidence to convict Jones was not actually before us in his appeal, and so, consequently, I would presume that the totality of the evidence was sufficient to convict him.[11] Thus, for the foregoing reasons, I would also reverse Jones's conviction and remand the conviction for a new plenary contempt hearing, if the trial court or the Commonwealth be so inclined. *See id.*

Based on the foregoing analysis, I concur in the majority opinion's conclusion affirming the trial court's conviction of Scialdone, although I do so on alternate grounds. However,

---

**11.** Jones's petition for appeal regarding the sufficiency of the evidence to convict was not granted. (Thus, he did not argue to the panel or to the Court *en banc* that the evidence was insufficient to support his conviction.) Therefore, I agree with the conclusion of the majority that, in relation to Jones, we should not consider the sufficiency of the evidence to support the contempt finding.

as I cannot agree with the majority opinion's affirmation of Taylor's and Jones's convictions, I respectfully dissent in relation to those appeals, for the foregoing reasons.

ELDER, J., with whom FELTON, C.J., and CLEMENTS, J., join, dissenting.

I believe the majority's application of Rule 5A:18 to bar this appeal reaches new heights in elevating form over substance and extends the boundaries of the rule far beyond those previously set out in Virginia's appellate decisions. Here, appellants objected to the trial judge's finding of contempt when she sentenced them. Although they did not detail the basis for their objection at that time, they did so just a few days later in written motions for stay of execution of sentence, which they filed *before* the trial judge entered an order memorializing her contempt ruling. More importantly, the trial judge acknowledged she *read* the motions *prior* to entering the contempt order. The motions specifically challenged the validity of the contempt rulings, alleging the trial judge, by calling witnesses and gathering evidence, exceeded the bounds of summary contempt proceedings without affording appellants the additional procedural rights to which they were entitled in non-summary proceedings. The trial judge was clearly made aware of appellants' specific objections to the contempt findings at a time when the matters were still within the breast of the court, and the trial judge expressly rejected those arguments in a later ruling on the record denying the motions for stay of execution of sentence. On these facts, I do not believe appellants were required to request a particular form of relief—the vacating or setting aside of the findings of contempt and the related sentences made from the bench but not yet memorialized in a written ruling—in order to satisfy Rule 5A:18. For the reasons set out in the majority opinion at the panel stage, *Scialdone v. Commonwealth,* 51 Va.App. 679, 710–24, 660 S.E.2d 317, 332–40 (2008), I continue to believe each appellant was denied his right to due process in proceedings that clearly exceeded the bounds appropriate for summary contempt. I also continue to believe remand of Scial-

done and Taylor for retrial in proceedings comporting with due process would not offend double jeopardy principles. *Id.* at 724–27, 660 S.E.2d at 340–41. Thus, I respectfully dissent.

## I.

Because I believe the majority opinion fails adequately to recount the sequence of events and some of the key facts related to those events, I briefly detail those here:

When the underlying criminal trial of Frankie Dulyea began in July 2006, Scialdone and third-year law student Jones served as trial counsel. Taylor, Scialdone's law partner, was not present in the courtroom for any of the proceedings in Dulyea's case. Taylor appeared only when, in the midst of trial on Wednesday, July 12, the judge directed Scialdone to use the telephone in the courtroom to summon Taylor and one of the firm's secretaries to come immediately to court. The judge ordered Scialdone not to provide them with any explanation for the judge's demand. Once Taylor and the secretary arrived, a significant portion of the judge's inquiry concerning the questionable exhibit occurred outside the presence of all but Scialdone and before the trial judge ever used the word contempt. Once she did state she was finding the men in contempt, Scialdone and Taylor both challenged the sufficiency of the evidence to support a finding of contempt, arguing the evidence amounted to negligence at most. Scialdone also inquired about the nature of the proceedings and said, "I may want a lawyer," which prompted a ruling from the trial court that the proceedings were for summary contempt. The judge indicated, "We will finish [Mr. Dulyea's criminal] trial and then we will have hearings on [the contempt] matter as far as . . . anything else you might want to say."

Immediately following the conclusion of Dulyea's trial on Friday, July 14, 2006, the trial judge stated the basis for finding each man in contempt and pronounced a sentence of ten days and a $250 fine for each. She ordered Scialdone and Jones to begin serving their sentences on Sunday, July 16, and allowed Taylor to delay reporting until July 24. Taylor re-

sponded, "Note our exception for the record please." The three men then filed notices of appeal of the judge's contempt findings.[12] However, because the trial court did not enter an order embodying the contempt rulings and sentences until *after* the notices of appeal were filed, the notices of appeal did not take effect until Wednesday, July 19, the date on which the final order was entered. *See Saunders v. Commonwealth,* 12 Va.App. 154, 155, 402 S.E.2d 708, 709 (1991).

On Monday, July 17, two days *prior* to the trial judge's entry of the contempt order, Scialdone and Taylor filed motions for stay of execution of their sentences pursuant to Code § 19.2–319. On Tuesday, July 18, Jones filed an identical motion. Each of the motions averred that, although the proceedings were conducted in a summary fashion, "[t]he conduct upon which the Court relied was not wholly contained within the record of the [underlying criminal] proceedings [against] Dulyea" and that "[t]he Court conducted an investigation that included [summoning and] interrogat[ing] . . . witnesses who were not participants in the trial proceedings" and using the court's deputy sheriff to gather evidence from computers at counsel's law office. Appellants alleged that because the proceedings were not in fact summary proceedings, they should have been allowed time to obtain counsel and prepare a defense. Thus, the basis of the motions for stay of execution of sentence pending appeal constituted a claim of the likelihood of success on the merits of the appeals.

On Wednesday, July 19, appellants filed in the Court of Appeals an emergency motion for stay of execution of sentence indicating two of them were already serving their sentences and that the circuit court "ha[d] been unwilling to say yes or no" to their motions for stay filed in that court, which they alleged "[was] tantamount to a denial" of those motions. The Court of Appeals, in the course of attempting to resolve appellants' emergency motions, learned the trial court had not yet prepared or entered a written order finding the men in

---

12. Scialdone and Taylor filed their notices of appeal on Friday, July 14. Jones filed his notice of appeal on Tuesday, July 18.

contempt. In response to the Court of Appeals' inquiry, the trial judge prepared and entered the written contempt order that day. The record clearly indicates the trial judge acknowledged she *received and read* appellants' motions for stay *before* she entered the order finding the men in contempt on Wednesday, July 19. Manifestly, then, at a time when the trial judge retained authority to set aside the contempt findings and initiate plenary proceedings, she was aware of appellants' claims that the contempt proceedings should not have been conducted summarily and that appellants should have been allowed time to obtain counsel and prepare a defense.

## II.

Rule 5A:18 provides that "[n]o *ruling of the trial court* ... will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." The purpose of the rule is to avoid unnecessary appeals, reversals, and mistrials by requiring litigants to inform the trial judge of the action complained of so that the judge has the opportunity to consider the issue intelligently and take timely corrective action. *See, e.g., Robinson v. Commonwealth,* 13 Va.App. 574, 576, 413 S.E.2d 885, 886 (1992). Formal exceptions to rulings are not necessary as long as the party "makes known to the court [*either* (1)] the action which he desires the court to take *or* [(2)] his objections to the action of the court and his grounds therefor." Code § 8.01–384(A).

The majority holds that "Under Rule 5A:18, raising a legal argument in support of one type of relief does not preserve for appellate review the same argument in support of another type of relief which was never requested." (Emphasis omitted.) Although this has been the practical *result* in *some* prior cases under particular factual scenarios, until today, neither this Court nor any higher appellate court whose decisions are binding upon us has held such a principle *must* be applied in *all* cases. In announcing such a rule, the majority unnecessarily tightens procedural bar boundaries well beyond the text

of Rule 5A:18 and Code § 8.01–384(A), which, as quoted above, expressly provides that *either* a statement of the action the objecting party desires the court to take, *i.e.*, the relief he seeks, *or* a statement of his objection to the court's action and the grounds for that objection is sufficient to preserve the objection for appeal.

The cases upon which the majority relies are factually distinguishable and do not dictate the result the majority reaches in this case. In a few well-defined areas, established principles require the objecting party to request a specific form of relief. A classic example is the requirement that a defendant who desires a mistrial must request one promptly upon occurrence of the event on which he claims entitlement to the mistrial; a mere objection to the event or a request for a cautionary instruction is insufficient to preserve the mistrial claim for appeal. *See, e.g., Bennett v. Commonwealth,* 29 Va.App. 261, 280, 511 S.E.2d 439, 448 (1999); *see also Manetta v. Commonwealth,* 231 Va. 123, 127 n. 2, 340 S.E.2d 828, 830 n. 2 (1986) (recognizing the well-settled principle that, where a defendant successfully objects to the admission of evidence and requests that it be stricken or obtains a ruling that evidence is admissible for only a limited purpose, a court has no duty to give a cautionary or limiting instruction unless the defendant specifically requests one).

The majority cites *Bennett* for the general proposition that " 'the objecting party must expressly seek the action that it desires the judge to take.' " However, *Bennett* involved a very specific factual context—allegedly objectionable comments made by a prosecutor during closing argument in a jury trial. 29 Va.App. at 280, 511 S.E.2d at 448. We made the statement quoted by the majority in that unique context, holding that *"[w]hen allegedly improper comments are made during closing argument in the guilt phase of a [jury] trial,* the objecting party must expressly seek the action that it desires the judge to take." *Id.* (emphasis added). We listed as the only two choices under those circumstances making a motion for a mistrial or requesting a cautionary instruction. *Id.* at 280–81, 511 S.E.2d at 448. The Court acknowledged

that requiring a defendant to make a prompt, specific request for a mistrial *under these particular circumstances* is a rule requiring "strict application," to which "[t]here appears to be no exception in Virginia law." *Id.* at 281, 511 S.E.2d at 449. Thus, our holding in *Bennett* belies the majority's assertion that such a strict rule applies *in every case.*

The majority focuses on this and other situations in which Virginia's appellate decisions have held that a prompt request for a specific type of relief is particularly important to avoid the need for retrial. However, not all situations require a request for a specific form of relief, as Code § 8.01–384(A) expressly acknowledges, or require that the objection be stated at a particular point in time and no other. Unless a more specific rule applies, as is the case for certain mistrial motions, a party challenging a court's determination "may meet the mandates of Rule 5A:18 in many ways." *Lee v. Lee,* 12 Va.App. 512, 515, 404 S.E.2d 736, 738 (1991) (en banc).

> For instance, counsel may make clear the ground for his objection in a motion to strike the evidence or in closing argument. Counsel may also state the grounds therefor during a motion to set aside the verdict or a motion to reconsider. Likewise, counsel may ... include an objection and reasons therefor in the final order or at least tender such an order to the trial judge.

*Id.* at 515–16, 404 S.E.2d at 738 (citations omitted); *see George v. Commonwealth,* 276 Va. 767, 773, 667 S.E.2d 779, 782 (2008) (reversing the decision of this Court applying Rule 5A:18, holding that "[a]lthough [the defendant] did not use the phrase 'fatal variance,' his arguments before the trial court [in objecting to a jury instruction and moving to set aside the jury's verdict] were sufficient to put that court on notice of his position regarding the inconsistency between the indictment and the jury instruction"); *cf. Jay v. Commonwealth,* 275 Va. 510, 517–20, 659 S.E.2d 311, 315–17 (2008) (holding that the Court of Appeals may not *dismiss* on jurisdictional grounds appeals that fail to comply with the requirement of Rules 5A:12(c) and 5A:20(e) that a petition include "[t]he principles of law, the argument, and the authorities relating to each

question presented" and that, although the Court may *deny* such appeals on waiver principles, it "should ... consider whether any failure to strictly adhere to the requirements of Rule 5A:20(e) is insignificant, thus allowing the court to address the merits of a question presented").

Where a party wishes to preserve objections for appeal through a motion filed after entry of the final decree or order, he must obtain a ruling from the trial court in compliance with Rule 1:1 in order to preserve the issue for appeal. *See Weidman v. Babcock*, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991); *Smith v. Smith*, 18 Va.App. 427, 433, 444 S.E.2d 269, 274 (1994). However, where a party makes his objections known to the court prior to or at the time of entry of a final order or decree and does not specifically disclaim the desire to have the court rule on those objections, entry of a final order or decree adverse to those objections constitutes a rejection of them and preserves them under Rule 5A:18 for purposes of appeal. *Compare Kaufman v. Kaufman*, 12 Va.App. 1200, 1204, 409 S.E.2d 1, 3 (1991) (holding objections were preserved for appeal where the party "made known to the trial court his position through his memoranda and other written correspondence with the court prior to the court's issuance of its amended final decree" and "the trial judge specifically acknowledged the existence of [his] objections"), *with Nusbaum v. Berlin*, 273 Va. 385, 406–06, 641 S.E.2d 494, 503–05 (2007) (holding the appellant waived the right to challenge his contempt conviction on due process grounds where, *inter alia*, he objected to the trial court's ruling on due process grounds prior to entry of the final order but specifically stated he was not asking the trial court to change the oral ruling already pronounced and the trial court never ruled on the objections he raised), *and Widdifield v. Commonwealth*, 43 Va.App. 559, 562–63, 600 S.E.2d 159, 161–62 (2004) (en banc) (in a revocation proceeding in which the trial court ruled the defendant was not entitled to credit for twelve months she previously served in jail as a condition of the suspension of a two-year prison sentence, during which defense counsel said first, "I understand," and then said, without elaboration, "I'm not sure

that's how it works," holding counsel's remarks did not make clear what relief, *if any,* counsel desired and, thus, "[a]ppellant failed to state an objection 'together with the grounds therefor' at the time of the ruling").

The majority's assertion in footnote 8 that "contempt orders 'orally pronounced from the bench' are immediately effective and enforceable" is correct as far as it goes, but what the majority does not make clear is that the principle upon which this language is based applies to *all judgments,* not just those for contempt. *Rollins v. Bazile,* 205 Va. 613, 616–17, 139 S.E.2d 114, 116–17 (1964) (involving trial for contempt following Rollins's "refusing to . . . submit to an examination by a physician appointed by the court to determine whether he was physically able to appear in court and testify"). Further, in deciding *Rollins,* the Court noted the relevant sequence of events in that case included not only the oral pronouncement of the ruling but also the spreading of an unsigned order memorializing that ruling on the order book on a particular day. *Id.* at 618, 139 S.E.2d at 118. On those facts, the Court held that the lack of the judge's signature on the order was not dispositive and that "[t]he copy of the order of conviction spread on the order book under date of August 6, 1963, was notice to the petitioner [Rollins] of the judicial determination of the matter," after which, in fact, he filed a timely petition for appeal and motion for bond pending appeal. *Id.* at 617–18, 139 S.E.2d at 117–18. Thus, to the extent that all oral rulings are immediately effective and enforceable, this fact does not negate the principle that the date of the court's endorsement of the order, or the date it is spread on the order book without endorsement, is the date from which other relevant time periods are calculated, i.e., the 21–day time limit of Rule 1:1 or the date of effectiveness of a prematurely filed notice of appeal. *Cf. Jefferson v. Commonwealth,* 269 Va. 136, 139, 607 S.E.2d 107, 109 (2005) ("[W]e point out that the *Rollins* principle does not affect the rule that: 'A court speaks only through its orders.'" (quoting *Cunningham v. Smith,* 205 Va. 205, 208, 135 S.E.2d 770, 773 (1964))).

Here, appellants presented their objections to the summary nature of the proceedings in their motions to stay execution of sentence. Although the motions for stay were filed after the trial court's oral pronouncement of sentence and after appellants filed their notices of appeal, the notices of appeal did not take effect until after the trial court entered the written order memorializing its contempt rulings and sentences. The trial court expressly stated that, before it entered the contempt order on July 19, 2006, it read appellants' motions for stay. The trial court clearly was aware of appellants' claims that the contempt proceedings were not in fact summary proceedings and, thus, that they should have been afforded various rights including time to obtain counsel and prepare a defense. The judge had ample notice and opportunity to correct the alleged error before entering the final order but opted to take no action because, as she later detailed on the record in denying the motions for stay, she believed summary proceedings were proper and that appellants received all the rights to which they were entitled.

The Supreme Court's recent holding in *Nusbaum* does not support a different result. In *Nusbaum*, the Court relied on dual grounds for concluding his due process objections were barred by that Court's Rule 5:25. 273 Va. at 404, 641 S.E.2d at 504. It emphasized that Nusbaum did not raise his due process objections for the first time until more than two months after the court found him in contempt and that he never requested a ruling on those objections, stating instead, each time he asserted his objections, that he was not asking the court to change its ruling. *Id.* at 404, 641 S.E.2d at 504. The Court also emphasized that the trial court in fact never ruled on any aspect of the due process objections Nusbaum attempted to raise on appeal. *Id.* at 403–04, 641 S.E.2d at 504. The Court held that because "Nusbaum did not afford the circuit court an opportunity to rule intelligently on the due process issues that he now raises," those issues were "therefore waived on appeal." *Id.* at 406, 641 S.E.2d at 505.

The holding in *Nusbaum* is readily distinguishable from appellants' cases. Here, during the very first stage of the

contempt proceedings on July 12, Scialdone specifically inquired about the nature of the proceedings, whether the contempt was civil or criminal, and said, "I may want a lawyer." In response, the trial court ruled that the proceedings were for summary contempt. Although Scialdone did not pursue the issue further at that point, the men objected generally to the contempt findings and punishment pronounced orally on July 14. Further, within four days after the court's oral pronouncement of appellants' contempt sentences and two days *before* the trial court entered the order memorializing its contempt findings, appellants filed motions challenging those findings on the merits based on the specific due process claims they assert on appeal. Although these challenges were made via motions to stay execution of their sentences, the contents of the motions made clear that appellants challenged the validity of their convictions and specifically articulated their reasons for that belief. Further, unlike Nusbaum, who twice specifically disclaimed a desire to have the trial court rule on his objections, the appellants never indicated that they did not wish to have the trial court consider their due process arguments and in fact attempted to obtain a prompt ruling on the motions by the trial court, albeit in the context of seeking a stay of execution of their sentences. Finally, and key in distinguishing the two cases, in a proceeding held on the record, the trial court made clear it read those motions—and, thus, was aware of the appellants' due process claims—before it entered the July 19, 2006 order finding appellants in contempt. Unlike in *Nusbaum*, appellants "afford[ed] the circuit court an opportunity to rule intelligently on the due process issues that [they] now raise[ ]," *id.*, thereby satisfying the requirements of Rule 5A:18.

### III.

Thus, contrary to the position taken by the majority, appellants assumed "responsib[ility] for advancing the facts and arguments entitling them to relief," *see Greenlaw v. United States*, ⸺ U.S. ⸺, ⸺, 128 S.Ct. 2559, 2564, 171 L.Ed.2d 399 (2008) (citation omitted), and "present[ed] [those argu-

ments] to the court[ ] in [an] appropriate manner at [an] appropriate time for adjudication," *see Sanchez–Llamas v. Oregon,* 548 U.S. 331, 356, 126 S.Ct. 2669, 2685, 165 L.Ed.2d 557 (2006). To hold that our consideration of this issue on appeal is somehow "[un]fair[ ] to the trial judge" because it "put[s] a different twist on a question that is at odds with the question presented to the trial court," *see Commonwealth v. Shifflett,* 257 Va. 34, 44, 510 S.E.2d 232, 237 (1999), is patently wrong, and this principle should not be used to bar consideration of this appeal on the merits.

On the merits, for the reasons set out in the panel's majority opinion, I continue to believe each appellant was denied his right to due process in proceedings that clearly exceeded the bounds appropriate for summary contempt. *Scialdone,* 51 Va.App. at 710–24, 660 S.E.2d at 332–40. I also continue to believe remand for retrial of Scialdone and Taylor in proceedings comporting with due process would not offend double jeopardy principles. *See id.* at 724–27, 660 S.E.2d at 340–41.